**WO**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Chimyere McCall, et al., | No. CV-19-05126-PHX-SMB |
| Plaintiffs, | **ORDER** |
| v. | |
| Damon Charles Williams, et al., | |
| Defendants. | |

Pending before the Court is Plaintiffs/Counterdefendants', Chimyere McCall and Monroe McCall's ("the McCalls"), Motion to Dismiss Defendants/Counterplaintiffs' Counterclaim. (Doc. 51.) Defendants/Counterplaintiffs, Damon and Zene Williams ("the Williams"), responded, (Doc. 52.), and the McCalls replied. (Doc. 53.)  Despite the parties' request, the Court elects to rule without oral argument. *See* L.R. Civ 7.2(f).

### I.     BACKGROUND

This action comes to the Court by way of removal under 28 U.S.C. § 1446(a). The original action was filed in Maricopa County Superior Court on March 19, 2019. (Doc. 1-1 at 11.) This action was filed by the McCalls seeking declaratory relief and damages from the Williams. (*Id*. at 12.) The McCalls allege three causes of action including two claims for relief under A.R.S. § 33-420 as well as a claim of racketeering based on A.R.S. § 13-2314.04. The parties' legal disputes run back more than a decade. Indeed, the claims and

1    counterclaims in this case cannot be understood without an explanation of the past

2    interactions and litigation involving the McCalls and the Williams.

3         United Solutions Corporation ("U.S.C.") was a former Washington corporation that

4    did business in Arizona. (Doc. 1-1 at 13; Doc. 48 at 2-3.) From the time of its formation in

5    2006 until its dissolution in 2011, U.S.C.'s sole shareholder and officer was Damon Charles

6    Williams. (*Id.*) On June 25, 2009, U.S.C. obtained a judgment against the McCalls from

7    the Maricopa County Superior Court in the amount of $1,043,375.00 plus an additional

8    $2,451.81 in costs. (Doc. 1-1 at 38.) The McCalls', shortly after the judgment was entered,

9    left Arizona and moved to Washington County Arkansas before the judgement could be

10   collected. (*Id.* at 14.) In 2010, U.S.C. filed an action in Arkansas state court seeking to

11   domesticate its Arizona judgement against the McCalls. (Doc. 1-1 at 14; Doc. 48 at 3.)

12        On November 4, 2010, the McCalls filed a petition for Chapter 7 bankruptcy

13   protection in the United States Bankruptcy Court for the Western District of Arkansas.[1]

14   *See* 5:10-bk-75819. Several months later, on February 7, 2011, U.S.C. filed an adversary

15   complaint in the bankruptcy proceeding seeking to have its judgement classified as a non-

16   dischargeable debt. *See* 5:11-ap-07015. However, prior to any hearing on whether the

17   judgement was dischargeable, U.S.C.'s counsel withdrew, citing nonpayment of fees and

18   a cessation of communications by U.S.C. as cause. (*Id.*) No officer of U.S.C. nor any

19   subsequent counsel for U.S.C. made any further appearance in the bankruptcy proceeding.

20   (*Id.*) Accordingly, on September 29, 2011, Judge Barry of the United States Bankruptcy

21   Court for the Western District of Arkansas  entered an order stating "[U.S.C.'s] case is

22   dismissed with prejudice under Rule 41(b) FRCP, made applicable through Rule 7041

23   FRBP, for failure to prosecute its case…such dismissal operates as an adjudication on the

24   merits. The claim of [U.S.C.], if any, is dischargeable." (*Id.*) The records of the McCalls'

25   proceedings in bankruptcy do not reveal any additional involvement or challenges by

26   U.S.C. or the Williams. Eventually on October 17, 2011, the bankruptcy court granted a

27
28   [1] As will be discussed below, the Court takes judicial notice of underlying state court
     action, bankruptcy proceedings in the United States Bankruptcy Court for the Western
     District of Arkansas, and the related Judgment Liens recorded by Maricopa County.

1   discharge of the McCalls' debts, including the McCalls' judgement debt to U.S.C. (*Id*.)

2   More than six years later, on March 23, 2018, the Williams created a lien against all

3   of the McCalls' Arizona real property by filing an "Affidavit for Renewal of Judgement"

4   with the Maricopa County Recorder and attaching a copy of the original 2009 judgement

5   for U.S.C. *See* Doc. No. 2018-0218732. The McCalls responded to the affidavit by filing

6   this action in Maricopa County Superior Court. (Doc. 1-1 at 11.) The McCalls' complaint

7   sought to have the Williams' lien declared invalid, sought damages for the Williams'

8   alleged filing of a wrongful lien, and sought to enforce a private right of action against the

9   Williams for racketeering. (*Id*. at 15-18.)

10   The Williams removed the case to this Court where they answered the Complaint

11   and asserted several counterclaims at issue in this motion. (Doc. 1; Doc. 48.) The

12   Counterclaim contains seven claims and an affirmative defense of recoupment that stem

13   from Ms. McCall's former employment with U.S.C., as well as one claim for "abuse of

14   process." (Doc. 48 at 13-23.) The McCalls responded with a Motion to Dismiss under Rule

15   12(b)(6), arguing the Williams' counterclaims were a reiteration of the U.S.C. complaint

16   against the McCalls that had resulted in the original 2009 judgement and as such were

17   barred by *res judicata*. (Doc. 51.) In the alternative, the McCalls argued that many of the

18   counterclaims made by the Williams pertain the events that occurred well beyond the

19   statute of limitations for bringing a claim. (*Id*.) Finally, the McCalls argue that while neither

20   *res judicat*a nor the applicable statute of limitations bars the Williams' abuse of process

21   claim, the Williams have nonetheless failed to state a claim. (*Id*.) The Williams have

22   responded asserting that the McCalls' motion is untimely, that neither *res judicata* nor any

23   statute of limitations bars their action, and that they have adequately stated a claim for

24   abuse of process. (Doc. 52.)

25   **II.     LEGAL STANDARD**

26   To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet

27   the requirements of Rule 8(a)(2). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

28   Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is

1    entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the

2    grounds upon which it rests." Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 555 (quoting

3    *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Dismissal under Rule 12(b)(6) "can be based

4    on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

5    cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

6    1988).  A complaint that sets forth a cognizable legal theory will survive a motion to

7    dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to

8    relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

9    *Twombly*, 550 U.S. at 570).  Facial plausibility exists if the pleader sets forth "factual

10   content that allows the court to draw the reasonable inference that the defendant is liable

11   for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action,

12   supported by mere conclusory statements, do not suffice." *Id.*

13       In ruling on a Rule 12(b)(6) motion to dismiss, the well-pled factual allegations are

14   taken as true and construed in the light most favorable to the nonmoving party. *Cousins v.*

15   *Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  However, legal conclusions couched as

16   factual allegations are not given a presumption of truthfulness, and "conclusory allegations

17   of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto*

18   *v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).  A court ordinarily may not consider evidence

19   outside the pleadings in ruling on a Rule 12(b)(6) motion to dismiss. *See United States v.*

20   *Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).  However, courts may "consider certain [other]

21   materials—documents attached to the complaint, documents incorporated by reference in

22   the complaint, or matters of judicial notice—without converting the motion to dismiss into

23   a motion for summary judgment." (*Id*. at 908).  Accordingly, a court may consider certain

24   documents satisfying Federal Rule of Evidence 201.[2]

25   ───────────────
[2] Additionally, and at a minimum, judicial notice of the Judgment Liens is also appropriate
26   under the incorporation-by-reference doctrine, allowing a court to consider "certain
     documents as though they are part of the complaint itself." *Khoja v. Orexigen Therapeutics,*
27   *Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018); *see also Ritchie*, 342 F.3d at 907 (permitting
     judicial notice "if the plaintiff refers extensively to the document or the document forms
28   the basis of the plaintiff's claim[s]."); (Doc. 1-1 at 11-21) (incorporating the Judgment

1

**III.    DISCUSSION**

2

**A.  Judicial Notice of the Underlying Bankruptcy Judgment**

3

The McCalls request the Court take judicial notice pursuant to Rule 201 of the

4

underlying state court action, bankruptcy proceedings in the United States Bankruptcy

5

Court for the Western District of Arkansas, and the related Judgment Liens recorded by

6

Maricopa County. (Mot at 4; *see also* Doc. 48 at ¶¶ 59-92.) Under Rule 201, a court may

7

judicially notice a fact "not subject to reasonable dispute because it (1) is generally known

8

within the trial court's territorial jurisdiction; or (2) can be accurately and readily

9

determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid.

10

201(b). "A court may take judicial notice of matters of public record." *Khoja*, 899 F.3d at

11

999. As such, judgments and other court documents are proper subjects of judicial notice.

12

*See e.g., United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007). But "[j]ust because

13

the document itself is susceptible to judicial notice does not mean that every assertion of

14

fact within that document is judicially noticeable for its truth." *Khoja*, 899 F.3d at 999.

15

Thus, a court can take judicial notice of another court's opinion "not for the truth of the

16

facts recited therein, but for the existence of the opinion, which is not subject to reasonable

17

dispute over its authenticity." *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir.

18

2001).

19

The McCalls' request for judicial notice largely concerns documents of public

20

record and court filings. These documents are not "subject to reasonable dispute" because

21

they are "capable of accurate and ready determination by resort to sources whose accuracy

22

cannot reasonably be questioned." Fed. R. Evid. 201. The Williams do not challenge the

23

authenticity of the documents provided, nor do they oppose the McCalls' request that the

24

Court take judicial notice. As such the McCalls' request for judicial notice is granted.

25

**B.  Timeliness of Counterdefendants' Motion**

26

The Williams argue as a threshold matter that the McCalls' Motion to Dismiss is

27

untimely under Local Rule of Civil Procedure 7.2(c) and should be dismissed. Rule 7.2

28

---

Liens).

1    governs the District of Arizona's rules and procedures for responding to motions in civil

2    cases. However, while this rule creates a deadline for responding to a motion, it does not

3    create or control the deadline by which a party must file an answer to a counterclaim. The

4    deadline for replying to a counterclaim is governed by Federal Rule of Civil Procedure

5    12(a)(1)(B) which states that, "A party must serve an answer to a counterclaim or

6    crossclaim within 21 days after being served with the pleading that states the

7    counterclaim…" Here, the Williams asserted their Counterclaim in their Amended Answer

8    to the McCalls' complaint, (Doc. 48.), filed on May 11, 2020. The McCalls filed their

9    Motion to Dismiss (Doc. 51) on June 1, 2020. Thus, the motion was filed within the 21-

10    day deadline and is timely.

11         **C.  Res Judicata**

12         The McCalls assert that the Williams' first seven claims and affirmative defense of

13    recoupment are barred by *res judicata* because the claims were resolved during the 2009

14    litigation between the parties. The McCalls note that "beginning in Paragraph 73 and

15    continuing through Paragraph 134, the Counterclaim simply re-states the claims from the

16    original [2009] Lawsuit." The sole difference from the original suit is that the Williams

17    have substituted their name in place of U.S.C.

18         "[C]laim preclusion and issue preclusion…are collectively referred to as "*res*

19    *judicata.*" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Under claim preclusion, a final

20    judgement forecloses successive litigation of the same claim whether or not the subsequent

21    litigation raises the same issues as the earlier suit. *Id*. This doctrine "protect[s] against 'the

22    expense and vexation attending multiple lawsuits, conserv[es] judicial resources, and

23    foste[rs] reliance on judicial action by minimizing the possibility of inconsistent

24    decisions.'" *Id* (quoting *Montana v. United States*, 440 U.S. 147, 153-54 (1979)); *see also*

25    *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1160 (9th Cir. 2002) ("Preclusion

26    doctrine…requir[es] that all related claims be brought together or forfeited..."); *Tahoe-*

27    *Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077-78 (9th

28    Cir. 2003) (claim preclusion "bars relitigation of all grounds of recovery that were asserted,

1
2
3
4
5
6

or could have been asserted, in a previous action…It is immaterial whether the claims…were actually pursued…the relevant inquiry is whether they could have been brought" (quoting *United States ex rel. Barajas v. Northrop Corp.*, 147 F.3d 905, 909 (9th Cir. 1998)). "The party asserting a claim preclusion argument 'must carry the burden of establishing all necessary elements.'" *Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 855 (9th Cir. 2016) (quoting *Taylor*, 553 U.S. at 907).

7
8
9
10
11
12
13
14
15
16
17

        Claim preclusion, "applies when there is (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between the parties." *Garity*, 828 F.3d at 855 (quoting *Cell Therapeutics, Inc. v. Lash Grp. Inc.*, 586 F.3d 1204, 1212 (9th Cir. 2009)). The Court generally finds privity where corporate relationships are sufficiently close to establish substantial identity of interests between parties. *Irwin v. Mascott*, 370 F.3d 924, 929 (9th Cir. 2004). For example, "when a person owns most or all of the shares in a corporation and controls the affairs of the corporation, it is presumed that in any litigation involving that corporation the individual has sufficient commonality of interest [to support a finding of privity]." *In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983) (citing *Sparks Nugget, Inc. v. Commissioner*, 458 F.2d 631, 639 (9th Cir. 1972)); *see also Irwin v. Mascott*, 370 F.3d 924, 930 (9th Cir. 2004).

18
19
20
21
22
23
24
25

        The Williams do not seem to dispute the common factual basis of the Counterclaim filed in this action and the claims filed by U.S.C. in 2009. Nor, do the Williams dispute that the 2009 claims were adjudicated to a final judgment. Instead, the Williams argue claim preclusion does not apply because they are not in privity with their former corporation. The Williams argue they are not suing as representatives or assignees of U.S.C. Instead, they allege their claims stem from "direct injuries [versus derivative injuries] to Williams [sic] shareholder interest of United Solutions Corp." This assertion raises its own issues as to the validity of the Williams' Counterclaim,[3] but even taking the

26

27
28

[3]The Court's resolution of the issue of privity make in-depth analysis superfluous but suffice to say there are grave doubts as to whether the causes of action alleged by the Williams are the proper subject of a "direct" shareholder suit. *See, e.g., Safranski v. Duma Video, Inc.*, No. 47716-5-II, 2017 Wash. App. LEXIS 137 *5 (Ct. App. Jan. 24, 2017)

1     statement at face value, it does not defeat privity. The Ninth Circuit has previously found

2     that privity existed between a corporation and its active controlling shareholder.

3     *Gottheiner*, 703 F.2d at 1140. The Williams' Amended Answer admits that Damon Charles

4     William was both the sole shareholder and sole officer of U.S.C. *See* (Doc. 48 at 2-3.) This

5     close corporate relationship demonstrates sufficient commonality of interest between

6     U.S.C. and the Williams to find they are in privity. Accordingly, the Williams' claims for

7     breach of duties, breach of the covenant of good faith and fair dealing, intentional

8     interference with a contract, misappropriation of trade secrets, theft, conversion, unfair

9     competition, and aiding and abetting are subject to claim preclusion and barred by *res*

10     *judicata*.

11     **D. Recoupment**

12     The Williams have failed to adequately plead recoupment. Equitable recoupment is

13     "a defendant's right to seek reduction of damages based on the amount of a related claim."

14     *City of St. Paul v. Evans*, 344 F.3d 1029, 1034 n.7 (9th Cir. 2003). A claim for recoupment

15     may be brought to defeat or reduce a claim arising out of the same transaction even if an

16     independent suit on the claim asserted would otherwise be barred by the statute of

17     limitations. *Strickland v. Truckers Express, Inc.*, No. CV 95-62-M-JCL, 2006 U.S. Dist.

18     LEXIS 101644 *12-13 (D. Mont. Oct. 30, 2006) (citing *Klemens v. Air Line Pilots*

19     *Association, International*, 736 F.2d 491, 501 (9th Cir. 1984)). This is because courts will

20     distinguish between "seeking affirmative recovery and having 'adjudicated questions

21     raised by way of defense.'" *City of Saint Paul*, 344 F.3d at 1034 (quoting *U.S. v. Western*

22     *Pacific Railroad Co.*, 352 U.S. 59, 73 (1956)). Notably, the defense of recoupment only

23     applies to countervailing claims *arising from the same transaction* and is available *strictly*

24     *for the purpose of abatement* or reduction. *Aalfs v. Wirum* (*In re Straightline Invs.*), 525

25

26     ("Even a shareholder who owns all or most of the stock, but who suffers damages only indirectly as a shareholder, cannot sue as an individual." (quoting *Sabey v. Howard*

27     *Johnson & Co.*, 5 P.3d 730, 735 (2000)). Also, it is rather anomalous for the Williams to assert that Zene Williams is suing based on "direct injuries…to [his] shareholder interest"

28     when they have admitted in their answer that Damon Williams was U.S.C.'s only shareholder. (Doc. 48 at 2.)

1    F.3d 870, 882 (9th Cir. 2008) (citing *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d

2    1392, 1400 (9th Cir. 1996)).

3           The Ninth Circuit has adopted the "logical relationship" test from *Moore v. New*

4    *York Cotton Exchange*, 270 U.S. 593 (1926), as the standard for determining if a

5    recoupment claim arises from the same transaction.[4] *Newbery*, 95 F.3d at 1402. "In *Moore*,

6    the Court stated that ''transaction' is a word of flexible meaning. It may comprehend a

7    series of many occurrences, depending not so much upon the immediateness of their

8    connection as upon their logical relationship.'" *Id.* (quoting *Moore*, 270 U.S. at 610). The

9    typical situation in which equitable recoupment can be invoked involves a credit and debt

10   arising out of a transaction for the same goods or services. *Id.* (quoting *University Medical*

11   *Center v. Sullivan* (*In re University Medical Center*), 973 F.2d 1065 (3rd Cir. 1992)).

12          In order to assert equitable recoupment, the claim must arise from the same

13   transaction as the underlying suit in which it is asserted. Here, the McCalls' underlying suit

14   is not based on the same transaction as the Williams' claim in recoupment. The Williams'

15   recoupment claim is based on the McCalls' actions during the parties' employment

16   relationship in 2006 and 2007. The McCalls' claims do not stem from their employment

17   relationship, but from the Williams' acts to create an allegedly wrongful lien against the

18   McCalls' property in 2019. Because the recoupment claim is not based on the same acts as

19   the underlying lawsuit, it must fail.[5]

20          **E.  Abuse of Process Claim**

21          The Williams have also asserted a counterclaim alleging that the McCalls' suit

22   against them "amounts to a frivolous lawsuit and an abuse of process." Arizona courts have

23   ─────────────────

24   [4] Note, however, the "logical relationship" test does not apply to proceedings in
     bankruptcy, where the Court has established a stricter standard for applying the doctrine.

25   *Newbery*, 95 F.3d at 1403 ("the district court…did not err by applying *Moore's* 'logical
     relationship' test. However,…courts should apply the recoupment doctrine in bankruptcy

26   cases only when 'it would . . . be inequitable for the debtor to enjoy the benefits of that
     transaction without meeting its obligations.'").

27   [5] Because of the Court's resolution on the question of claim preclusion it is unnecessary to

28   resolve the parties' argument regarding the applicable statute of limitations for the
     Williams' counterclaims.

1    explained that "[t]he elements of an abuse-of-process claim are '(1) a willful act in the use
2    of judicial process; (2) for an ulterior purpose not proper in the regular conduct of the
3    proceedings.'" *Crackel v. Allstate Ins. Co.*, 208 Ariz. 252, 257 (App. 2004) (citing
4    *Nienstedt v. Wetzel*, 133 Ariz. 348, 353 (App. 1982). An ulterior purpose means "the
5    process has been used primarily to accomplish a purpose for which the process was not
6    designed." *Id*. "In the context of this tort, Arizona interprets 'process' as encompassing
7    'the entire range of procedures incident to the litigation process.'" *Id*. (citing *Nienstedt*, 133
8    Ariz. at 352). Examples of improper purposes include when "one uses the litigation process
9    as a 'form of coercion to obtain a collateral advantage, not properly involved in the
10   proceeding itself, such as the surrender of property or the payment of money, by the use of
11   the process as a threat or a club. There is, in other words, a form of extortion.'" *Fappani v.*
12   *Bratton*, 243 Ariz. 306, 311 (App. 2017) (quoting *Morn v. City of Phoenix*, 152 Ariz. 164,
13   168, 730 P.2d 873 (App. 1986)); *see also Nienstedt,* 133 Ariz. at 354 (listing examples such
14   as the use of subpoenas to exhaust opponent's resources or impose financial hardship, or
15   selectively assigning claims to create an inconvenient forum). The initiation of a lawsuit
16   alone is not enough to establish an abuse of process claim. *See Joseph v. Markovitz*, 27
17   Ariz. App. 122, 126 (1976). The claimant must show the accused's *primary motivation* is
18   to use the judicial process in an unauthorized or improper manner. *Crackel*, 208 Ariz. at
19   259. As long as the process is used for the purpose for which it is intended, an ulterior
20   motive of gain or spite is not sufficient. *Nienstedt*, 133 Ariz. at 353 (quoting Restatement
21   (Second) of Torts § 682, Comment (b) (1977).

22   　　　Though fairly unclear, the Williams' abuse of process claim seems to argue that the
23   McCalls' former Motion to Strike the Williams' Affidavit of Judgment was made for the
24   improper purpose of attempting to avoid repeat bankruptcy proceedings. However, these
25   allegations fail to state a claim for abuse of process because the claim fails to allege any
26   plausible improper purpose. The sole "improper purpose" alleged by the Williams is that
27   the McCalls were attempting to avoid filing in the bankruptcy court. First off, it is unclear
28   how the McCalls' even could have responded to an Affidavit of Renewal filed in Maricopa

1  County Superior Court other than by filing a motion in that same venue. Second off, even

2  indulging the Williams' belief that the bankruptcy court was available, the McCalls

3  decision to select a different available forum is not improper. Finally, asking for an

4  Affidavit of Judgement to be struck cannot bring any collateral pressure on the Williams,

5  because the only result of such a is the one contemplated by law, removal of the document

6  struck.

7      As such, the Williams have failed to allege any improper purpose and their claim

8  for abuse of process is dismissed.

9      **F.  Leave to Amend**

10      The well-settled law in the Ninth Circuit allows claimants leave to amend unless "it

11  is…'absolutely clear' that [the claimant] could not cure [the Counterclaim's] deficiencies

12  by amendment.". *See Jackson v. Barnes*, 749 F.3d 755, 767 (9th Cir. 2014) (citations

13  omitted); *Lopez*, 203 F.3d at 1131 (en banc) (holding a pro se litigant must be given leave

14  to amend "if it appears at all possible the plaintiff can correct the complaint's defects); Fed.

15  R. Civ. P. 15(a)(2). The Court finds that amendment would be futile for the Williams'

16  affirmative defense of recoupment because its factual basis is not related to the underlying

17  claim. Additionally, *res judicata* renders amendment futile as to every counterclaim other

18  than the Williams' claim for abuse of process. Finally, amendment of the Williams' abuse

19  of process would also be futile because filing a motion to strike the Williams' Affidavit of

20  Judgement cannot create a collateral advantage sufficient to find an improper purpose.

21      **G.  The Williams' Rule 60(b)(4) Motion**

22      The Williams final argument in their Response to the McCalls' Motion to Dismiss

23  raises a Rule 60(b) motion with the seeming objective of challenging the McCalls' request

24  for judicial notice of the 2011 proceedings before the Bankruptcy Court of the Western

25  District of Arkansas. Rule 60(b) is a vehicle that allows a district court to correct its own

26  mistakes. *Kingvision Pay-Per-View v. Lake Alice Bar*, 168 F.3d 347, 350 (9th Cir. 1999).

27  But Rule 60(b) does not somehow create jurisdiction in this Court to overturn a final

28  judgement in Arkansas. Even ignoring this glaring error, the Williams motion is not timely.

*See* Fed. R. Civ. P Rule 60(c). The Bankruptcy ruling discharging U.S.C.'s judgement against the McCalls occurred almost nine years ago. The Williams have presented no theory as to what event could excuse such a delay in requesting relief under Rule 60.

**IV.   CONCLUSION**

Accordingly,

**IT IS ORDERED**, that the McCalls' Motion to Dismiss (Doc. 51) is **granted**.

Dated this 13th day of November, 2020.

Honorable Susan M. Brnovich
United States District Judge

- 12 -